**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No: 1:18-cv-01922-WJM-NYW

UNITED CANNABIS CORPORATION
a Colorado Corporation
Plaintiff,

v.

PURE HEMP COLLECTIVE INC.
a Colorado Corporation
Defendant.

---

**DEFENDANT'S EARLY MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

On November 27, 2018, UCANN served its infringement contentions on Pure Hemp.  UCANN has alleged that Pure Hemp infringes claims 10, 12, 14, 20-22, 25, 27, 28, 31, and 33 of U.S. Patent No. 9,730,911 ('911 Patent).  Pure Hemp requests early partial summary judgment that all asserted claims of the '911 Patent are invalid, which will substantially reduce the number of issues before the Court in this case.

Claims 10, 12, 14, 20-22, 25, 27, 28, and 33 are invalid because they are directed to patent-ineligible natural phenomena, namely, cannabinoids and terpenes found naturally in the *cannabis* plant.  Claim 31 is invalid because it is a dependent claim that does not reference a claim previously set forth, and because it is a multiple dependent claim that improperly depends on another multiple dependent claim.

**A.    MOVANT'S STATEMENT OF MATERIAL FACTS**

1.    Plants of the genus *cannabis* include chemovars which naturally contain different amounts of individual cannabinoids.  *See* Declaration of James R. Gourley ("Gourley Dec."), Exhibit A ('911 Patent), p. 3, col. 4, ll. 40-45.

2. Cannabidiol (CBD), tetrahydrocannabinol (THC), and cannabinol (CBN) are cannabinoids found naturally within *cannabis* plants. *See* Gourley Dec., Exhibit B, Oier Aizpurua-Olaizola et al., *Identification and quantification of cannabinoids in* Cannabis sativa L. *plants by high performance liquid chromatography-mass spectrometry*, Analytical and Bioanalytical Chemistry, 7549-7560 (2014); *see also* Gourley Dec., Exhibit A. pp. 3-4, col. 4, ll. 51-58; col. 5, ll. 57-58.

3. The two cannabinoids usually produced in greatest abundance by *cannabis* plants are CBD and/or THC, while there is usually little CBN in a fresh plant. *See* Gourley Dec., Exhibit A, p. 3, col. 4, ll. 51-58; col. 5, ll. 57-58.

4. Some *cannabis* strains "have been bred to produce minimal levels of THC" while others "have been selectively bred to produce high levels of THC." Gourley Dec., Exhibit A, p. 3, col. 4, ll. 45-50.

5. *Cannabis* plants also naturally produce over 100 different terpenes and flavonoids, including d-limonene, linalool, 1,8-cineole (eucalyptol), α-pinene, terpineol-4-ol, p-cymene, borneol, Δ-3-carene, β-sitosterol, β-myrcene, β-caryophyllene, cannflavin A, apigenin, quercetin, and pulegone. *See* Gourley Dec., Exhibit A, pp. 4-5, col. 6, l. 15 to col. 7, l.4.

6. Liquid dosage forms may be prepared in accordance with standard principles of pharmaceutical formulation, known to those skilled in the art. *See* Gourley Dec., Exhibit A, p. 5, col. 7, ll. 51-62.

7. Methods of calculating cannabinoid content (as %) are well known in the art. *See* Gourley Dec., Exhibit A, p. 5, col. 7, ll. 5-8.

8.      Any suitable method for extraction known in the art may be used to practice the '911 Patent. *See* Gourley Dec., Exhibit A, p. 6, col. 9, ll. 29-30.

9.      The Pharmacopoeia of the United States of America, Fourth Decennial Revision, published in 1864, provides instructions for preparing a liquid Tinctura Cannabis (or Tincture of Hemp) based on a Purified Extract of Hemp. *See* Gourley Dec., Exhibit C, p. 14.

**B.     LEGAL ARGUMENTS REGARDING SECTION 101**

The Supreme Court has "set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354, 82 L. Ed. 2d 296, 189 L. Ed. 2d 296 (2014). The test is comprised of two consecutive steps. First, courts must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id*. If the answer is "yes," courts must then in step two ask: "[w]hat else is there in the claims before us?" *Id*.

In step two, the reviewing court "examine[s] the elements of the claims to determine whether they contain an inventive concept sufficient to transform the claimed naturally occurring phenomena into a patent-eligible application." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1361 (Fed. Cir. 2017). The court "must consider the elements of the claims both individually and as an ordered combination to determine whether additional elements transform the nature of the claims into a patent-eligible inventive concept." *Id*. at 1362. Further, the inventive concept contained in the claim "must do more than simply recite 'well-understood,

routine, conventional activity.'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016).

Whether a patent satisfies the requirements of 35 U.S.C. § 101 is an issue of law. *See In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008). The language of the patent claims governs the patent eligibility inquiry. *See Id.* The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic*, 859 F.3d at 1360; *see also Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) (stating that "claim construction is not an inviolable prerequisite to a validity determination under § 101.").

**1. CBD, THC, and CBN are natural phenomena.**

CBD, THC and CBN are found naturally in the *cannabis* plant. In the scientific paper by Aizpurua-Olaizola et al. cited previously, Table 4 shows the identity and quantity of "six major cannabinoids" found in 30 different *cannabis sativa* strains. Gourley Dec., Exhibit B, p. 9. Each and every strain contained detectable levels of the neutral form of CBD, THC and CBN, with the outdoor-grown varieties showing higher levels than indoor-grown varieties. *Id*. Aizpurua-Olaizola et al. suggest that outdoor varieties have a higher concentration of CBN because "it is known that CBN is produced when THC is exposed to air and consequently degraded to CBN," and that "in the same way, outdoor plants have also [*sic*] higher degradation of acidic cannabinoids to their corresponding neutral compounds. Owing to this, they have more THC and CBD than indoor plants." *Id*. at 10.

The '911 Patent agrees, stating that the "two cannabinoids usually produced in greatest abundance [by *cannabis* plants] are cannabidiol (CBD) and/or Δ9-tetrahydrocannabinol (THC)." Gourley Dec., Exhibit A, p. 3, col. 4, ll. 51-58. In fact, some *cannabis* strains "have been bred to produce minimal levels of THC" while others "have been selectively bred to produce high levels of THC." *Id*. at col. 4, ll. 45-50. The '911 Patent further states that CBN "is the primary product of THC degradation, and there is usually little of it in a fresh plant," thereby indicating that a "fresh plant" contains both THC and CBN. *Id*. at p. 5, col. 5, ll. 57-58. Because CBD, THC and CBN are found naturally within the *cannabis* plant, they are natural phenomena and not patent-eligible subject matter.

Additionally, the Federal Circuit has interpreted the Supreme Court's decision in *Myriad* to mean that "neither naturally occurring compositions of matter, nor synthetically created compositions that are structurally identical to the naturally occurring compositions, are patent eligible." *In re BRCA1- and BRCA2- Based Hereditary Cancer Test Patent Litigation*, 774 F.3d 755, 760 (Fed. Cir. 2014) (citing *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 133 S. Ct. 2107, 2117, 186 L. Ed. 2d 124 (2013)). Therefore, whether the CBD, THC and CBN of the '911 Patent claims are the product of an extraction process, a synthetic version of the chemicals, or combination thereof, is of no consequence to the Section 101 inquiry.

**2. Claim 10 is directed to the natural phenomenon of CBD.**

Claim 10 of the '911 patent is directed to CBD, a natural phenomenon. Claim 10 of the '911 Patent reads as follows: A liquid cannabinoid formulation, wherein at least 95% of the total cannabinoids is cannabidiol (CBD). In other words, CBD is the

only chemical component required by claim 10, and it is described in terms of a percentage of total cannabinoids and as a liquid formulation. There is no difference between the CBD that can be found naturally within the *cannabis* plant, and the CBD that is the subject of claim 10. Consequently, claim 10 is directed to the natural phenomenon of CBD.

At least one district court has held that a claim to a formulation containing a specified amount of a naturally occurring amino acid (beta-alanine) is invalid under Section 101. *See Natural Alternatives Int'l, Inc. v. Allmax Nutrition, Inc.*, 258 F. Supp. 3d 1170, 1181-1184 (S.D.Cal. 2017) (holding that the following claim was invalid under Section 101: A human dietary supplement, comprising a beta-alanine in a unit dosage of between about 0.4 grams to 16 grams, wherein the supplement provides a unit dosage of beta-alanine.) Additionally, in a nonprecedential opinion, the Federal Circuit affirmed a Patent Trial and Appeal Board finding that formulation claims directed to specific ratios and amounts of polyunsaturated, monounsaturated, and saturated fatty acids, including omega-6 and omega-3 fatty acids, derived from olive oil and walnut oil, were invalid under Section 101. *See In re: Bhagat*, Case No. 2016-2525 (Fed. Cir. March 16, 2018).[1]

### 3. Claims 20 and 25 are directed to the natural phenomena of CBD, THC and CBN.

Claim 20 reads as follows: A liquid cannabinoid formulation, wherein at least 95% of the total cannabinoids are THC and CBD. Claim 25 reads as follows: A liquid cannabinoid formulation, wherein at least 95% of the total cannabinoids are CBD,

---

[1] Available online at http://www.cafc.uscourts.gov/sites/default/files/opinions-orders/16-2525.Opinion.3-14-2018.1.PDF

cannabinol (CBN) and THC. For the same reasons that claim 10 is directed to the natural phenomenon of CBD, claim 20 is directed to the natural phenomena of THC and CBD, and claim 25 is directed to the natural phenomena of CBD, THC, and CBN. The Supreme Court has held that mixing up to six different bacterial species found in nature is insufficient to render the combination patent-eligible even though it was not previously known that the substances could be mixed together without harmful effect, and the combination provided certain advantages. *See Funk Brothers Seed Co. v. Kalo Inoculant Co.*, 333 U. S. 127, 130-132, 68 S. Ct. 440, 92 L. Ed. 588, 1948 Dec. Comm'r Pat. 671 (1948); s*ee also Allmax*, 258 F. Supp. 3d at 1185 (holding a composition claim combining two different naturally occurring amino acids patent-ineligible, relying on *Funk*). Therefore, a mixture of two or three different cannabinoids that can be found together naturally in the *cannabis* plant does not render the combination patent-eligible.

**4. The "liquid" formulation limitation of claims 10, 20 and 25 does not provide an inventive concept.**

The liquid formulation limitation does not transform claim 10, 20, or 25 into a patent-eligible inventive concept. The '911 Patent states as follows: "Preferred dosage forms include, liquid dosage forms." Gourley Dec., Exhibit A, p. 5, col. 7, ll. 56-57. In the next sentence, the '911 Patent states as follows: "Such dosage forms may be prepared in accordance with standard principles of pharmaceutical formulation, known to those skilled in the art." *Id*. at col. 7, ll. 60-62. Thus, the '911 Patent admits that providing liquid formulations is well-understood, routine, and conventional, which means it cannot provide the inventive concept needed to save these claims from patent

ineligibility. S*ee Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016) (holding that "simply appending conventional steps, specified at a high level of generality, which are 'well known in the art' and consist of 'well-understood, routine, conventional activities' previously engaged in by workers in the field, is not sufficient to supply the inventive concept.")(citing *Alice*, 134 S. Ct. at 2357, 2359)(internal brackets omitted).

Even if the '911 Patent had not admitted that providing liquid formulations was routine and conventional, that fact is hardly in dispute. The Pharmacopoeia of the United States of America, Fourth Decennial Revision, published in 1864, provides instructions for preparing a liquid Tinctura Cannabis (or Tincture of Hemp), which involves dissolving 360 grains of "Purified Extract of Hemp" in one pint of alcohol, and filtering it through paper. *See* Gourley Dec., Exhibit C, p. 14.

**5. The "percent of total cannabinoid" limitation of claims 10, 20 and 25 does not provide an inventive concept.**

Providing a formulation with a specific amount or percentage of ingredients is also well-understood, routine, and conventional. The '911 Patent states that "methods of calculating cannabinoid content (as %) are well known in the art." *Id*. at Exhibit A, p. 5, col. 7, ll. 7-8. Additionally, the '911 Patent states that separate "extracts may be prepared from single *cannabis* plant varieties having differing cannabinoid content (e.g. high THC and high CBD plants) and then mixed or blended together." *Id*. at col.. 7, ll. 39-40. The '911 Patent then states that this "approach is preferred if, for example, it is desired to achieve a defined ratio by weight of individual cannabinoids in the final formulation." *Id*. at col. 7, ll. 44-45. The '911 Patent also states that "[a]ny suitable

method for extraction known in the art may be used." *Id*. at p. 6, col. 9, ll. 29-30. Mixing different extracts having differing cannabinoid content, wherein the extracts can be obtained using any suitable extraction method known in the art, to arrive at a chosen percentage for individual cannabinoids is well-understood, routine and conventional.

Furthermore, any suggestion by UCANN that the presence of CBD, THC and CBN in nature at lower percentages of total cannabinoids than the percentages claimed by the '911 Patent somehow renders these claims patent-eligible would be incorrect. The Supreme Court in *Myriad* invalidated one patent claim directed to an isolated DNA segment identified by an ordered sequence of 1,863 amino acids, and another claim directed to any sequence of 15 amino acids that occurs within that larger sequence of 1,863 amino acids, under Section 101. *Myriad*, 133 S. Ct. at 2112. In practice, these isolated DNA strands would be inherently present at a high level of purity, yet represent a tiny fraction of the more than 3 billion sequential amino acids that encode the human genome. Similarly, for example, claim 10 of the '911 Patent would read on a 100% pure liquid CBD composition, which would in effect be an isolated CBD composition presented in the conventional, routine, and well-known form of a liquid.

**6. The "liquid" and "percent of total cannabinoid" together do not provide an inventive concept.**

Finally, considering all of the elements of these claims as ordered combinations does not compel a different result. Providing a liquid formulation with a specific percentage of ingredients is well-known, conventional and routine activity, as amply shown by the facts of record discussed herein, including within the '911 Patent.

Consequently, claims 10, 20 and 25 are directed to patent-ineligible natural phenomena without anything more that would constitute an eligible inventive concept. They should be held invalid.

### 7. Terpenes are natural phenomena found naturally in the *cannabis* plant along with cannabinoids.

The '911 Patent states that "[i]n addition to cannabinoids, *cannabis* plants produce terpenes, a diverse group of organic hydrocarbons that are the building blocks of the cannabinoids." Gourley Dec., Exhibit A, p. 4, col. 6, ll. 11-13. The '911 Patent further states that "[o]ver 100 different terpenes have been identified in the *cannabis* plant, and every strain tends toward a unique terpene type and composition," and goes on to describe the properties of nine such terpenes. *Id*. at pp. 4-5, col. 6, l. 14 to col. 7, l. 4. It is, therefore, beyond dispute that terpenes are found naturally within the *cannabis* plant along with cannabinoids.

### 8. Claims 12, 14, 21, 22, 27 and 28 are directed to the naturally occurring phenomena of CBD, THC, CBN and terpenes.

Claims 12, 21, and 27 depend on claims 10, 20, and 25, respectively, and specify that the formulation further comprises "at least one terpene/flavonoid." Claim 14 depends on claim 12, and specifies that the terpene/flavonoid is "d-limonene, linalool, 1,8-cineole (eucalyptol), α-pinene, terpineol-4-ol, p-cymene, borneol, Δ-3-carene, β-sitosterol, β-myrcene, β-caryophyllene, cannflavin A, apigenin, quercetin, or pulegone" – all of which are found naturally in the *cannabis* plant. Because terpenes are found naturally along with CBD, THC and CBN in the *cannabis* plant, the claimed combination of terpenes and cannabinoids is even more clearly patent ineligible than

the combination of bacterial strains that the Supreme Court declared ineligible in *Funk Brothers*. *See Funk Brothers*, 68 S. Ct. at 593 (stating that "There is no way in which we could call [the bacteria mixture a product of invention] unless we borrowed invention from the discovery of the natural principle itself").

Claims 22 and 28 depend on claims 20 and 25, respectively, and specify that the formulation comprises "no more than 4% terpene." As discussed previously, terpenes are found naturally in the *cannabis* plant along with cannabinoids, and specifying a percentage of an ingredient is well-understood, routine, and conventional.

**9. Claim 33 does not add an inventive concept to the natural phenomena of the claims on which it depends.**

Claim 33 specifies that the formulation of claims 10, 20, or 25 is "formulated for oral, sublingual, buccal, or topical administration." As discussed previously, the '911 Patent admits that such formulations are well-known, routine, and conventional. Specifically, the '911 Patent states as follows:

> The extract may be formulated with any convenient pharmaceutically acceptable diluents, carriers or excipients to produce a pharmaceutical composition. The choice of diluents, carriers or excipients will depend on the desired dosage form, which may in turn be dependent on the intended route of administration to a patient. Preferred dosage forms include, liquid dosage forms for administration via pump-action or aerosol sprays, tablets, pastilles, gels, capsules, suppositories, powders, etc. and vaporizers. Such dosage forms may be prepared in accordance with

11

standard principles of pharmaceutical formulation, known to those skilled in the art. Gourley Dec., Exhibit A, p. 5, col. 7, ll. 51-62.

The '911 Patent goes on in the next paragraph to state that "liquid formulations are particularly preferred" and that such "formulations are suitable for oral, sublingual, buccal, or topical administration." *Id*. at col. 7, l. 63 to col. 8, l.7. In sum, according to the '911 Patent, liquid dosage forms, which "may be prepared in accordance with standard principles of pharmaceutical formulation, known to those skilled in the art" are suitable for oral, sublingual, buccal, or topical administration. Therefore, these limitations in claim 33 of the '911 Patent represent nothing more than well-known, conventional, and routine activity, and cannot confer patent eligibility on claim 33.

## C.     LEGAL ARGUMENTS REGARDING SECTION 112

Section 112 of the Patent Act sets forth several requirements for patentability. Section 112(d) requires that, subject to Section 112(e), "a claim in dependent form shall contain a reference to a claim <u>previously set forth</u> and then specify a further limitation of the subject matter claimed." 35 U.S.C. § 112(d)(emphasis added) Section 112(e) requires that a "claim in multiple dependent form shall contain a reference, in the alternative only, to more than one claim <u>previously set forth</u> and then specify a further limitation of the subject matter claimed. <u>A multiple dependent claim shall not serve as a basis for any other multiple dependent claim.</u>" 35 U.S.C. § 112(e) (emphasis added) Failure to comply with any requirement of Section 112 results in invalidity of the claim. *See* 35 U.S.C. § 282(b)(3)(a). Claim 31 violates at least two requirements of Section 112, thereby invalidating the claim.

   **1.    Claim 31 does not contain a reference to a previous claim.**

Claim 31 reads as follows: The formulation of any one of the <u>proceeding</u> claims, wherein the formulation is infused in a medium chain triglyceride (MCT). (emphasis added) Thus, claim 31 does not reference any <u>preceding</u> claim, but instead references any <u>proceeding</u> claim – or any claim that comes after it. This is a violation of Section 112(d) and (e) on its face and requires no claim construction.

The Federal Circuit has recognized that "'[i]nvalidity of the patent or any claim in suit for failure to comply with *any* requirement of sections 112 or 251 of this title' is expressly included among the available defenses to an infringement suit." *See Pfizer Inc. v. Ranbaxy Labs.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006) (emphasis in original) (citing 35 U.S.C. § 282)  In *Pfizer*, the Federal Circuit invalidated a claim for violating pre-AIA Section 112 para. 4 (now 112(d)).  *Id*.  This Court should follow suit and declare claim 31 invalid for violating Section 112(d) and (e).

The Court should also resist any request by UCANN to change the word <u>proceeding</u> to <u>preceding</u>.  While it is true that courts can correct some patent mistakes, courts can only correct "minor typographical and clerical errors." *Novo Industries, L.P. vs. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003).  Even if this was the type of mistake that courts could correct, a district court "can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Id*.

First, the correction is subject to reasonable debate because claim 31 has multiple claims both preceding it and proceeding it.  Second, the prosecution history of the '911 Patent does not shed any light on how claim 31 should be worded to save it

13

from invalidity. In the last amendment filed by UCANN during prosecution, what is now claim 31 of the '911 Patent was then submitted as new claim number 81 – the last claim in the amended claim set – and used the "any one of the proceeding claims" language at issue here. Gourley Dec., Exhibit D, p. 5. Even if claim 81 was submitted during prosecution as "any one of the preceding claims," it would have been dependent on every single other claim in the set, including claim 8 (which is now claim 32 of the '911 Patent). *Id*. at p. 2. Claim 8 of the last amended set of claims, in turn, depended back on claim 81. *Id*. Such a nonsensical reading of claim 81 is untenable, and makes it impossible for this Court to discern the real intent behind the original language used in claim 81 (now claim 31).

Furthermore, changing proceeding to preceding in claim 81 would still mean that claim 81 was a multiple dependent claim that depended on several multiple dependent claims in that claim set, thereby invalidating claim 81 under Section 112(e). *Id*. at pp. 2-5. The Federal Circuit has warned (in a nonprecedential opinion) that "[t]itle 35 forbids this type of claim drafting because it can – as here – lead to bizarrely complex chains of cross-referencing claims in which one multiple dependent claim impermissibly serves as a basis for other multiple dependent claims." *FWP IP ApS v. Biogen MA, Inc.*, 2018 U.S. App. LEXIS 29943 *19; __ Fed. Appx. __; 2018 WL 5292070 (Fed. Cir. October 24, 2018) The court in *FW IP Aps* went on to note that such "impermissibly-drafted original claims would—as Judge Learned Hand observed in a different but related context—take 'the patience of a yogi to decipher their meaning, as they stand.'" *Id*. at *20 (citing *Victor Talking Mach. Co. v. Thomas A. Edison, Inc.*, 229 F. 999, 1001, 1915 Dec. Comm'r Pat. 50 (2d Cir. 1916)). This Court

should not attempt to decipher what UCANN really intended for claim 81 (now 31 of the '911 Patent), but instead hold that it is invalid for failure to comply with Section 112.

### 2. Claim 31 is a multiple dependent claim that depends on other multiple dependent claims.

Again, claim 31 is directed to the "formulation of any one of the proceeding claims." Claim 31 has five claims proceeding it, and thirty claims preceding it. Thus, regardless of how it is interpreted, it is a multiple dependent claim.

Claim 33, which proceeds claim 31, is directed to the "formulation of claim 1, 5, 10, 16, 20, or 25." Thus, claim 31 is a multiple dependent claim that depends on a multiple dependent claim. This is a violation of Section 112(e) on its face.

Claim 24, which precedes claim 31, is directed to the "formulation of claim 16 or 20." Claim 9, which precedes claim 31, is directed to the "formulation of claim 1 or 5." Thus, even if claim 31 were interpreted as being directed to a formulation of any one of the preceding claims, it would be a multiple dependent claim that depends on a multiple dependent claim. This is also a violation of Section 112(e) on its face.

Therefore, under any possible interpretation, claim 31 is invalid under Section 112(e) as a multiple dependent claim improperly depending on another multiple dependent claim. *See Trs. of the Univ. of Pa. v. Eli Lilly & Co.*, 2016 U.S. Dist. LEXIS 70442 *3 (E.D. Pa. May 31, 2016)(holding, on a motion to dismiss, that claims "32-40 of the [patent in suit] are improper multiple dependent claims and therefore violate 35 U.S.C. § 112, ¶5. These mistakes are not the type of minor typographical and clerical errors that can be fixed by a Court.")(affirmed under Rule 36 at *Trs. of the Univ. v. Eli Lilly & Co.*, 2018 U.S. App. LEXIS 26196 (Fed. Cir., Sept. 17, 2018)).

Dated: November 29, 2018

Respectfully submitted,

Carstens & Cahoon, LLP

By: /s/ James R. Gourley
James R. Gourley
CARSTENS & CAHOON, LLP
13760 Noel Road, Suite 900
Dallas, Texas 75240
Tel: (972) 367-2001
Email: gourley@cclaw.com

HUNSAKER | EMMI, P.C.
By: /s/ Donald T. Emmi
Donald T. Emmi, Reg. #38983
1707 Cole Blvd, Suite 210
Golden, Colorado 80401
Tel: (303) 456-5116
Email: donnie@helegal.com

*Attorneys for Pure Hemp Collective, Inc.*

**CERTIFICATE OF SERVICE**

     I hereby certify that on this 29th day of November 2018, I electronically filed this DEFENDANT'S EARLY MOTION FOR PARTIAL SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

oarmon@cooley.com
mzambarda@cooley.com
donnie@helegal.com

                                       /s/ James R. Gourley
                                       James R. Gourley, Esq.